**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILSON DAVID RIVAS SIFONTES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | 3:26-cv-01352 |
| v. | ) | |
| | ) | |
| LEONARD ODDO et al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**MEMORANDUM ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**I. Background**

Pending before the Court is Petitioner's Petition for Writ of Habeas Corpus. (ECF No. 1). Petitioner, a citizen of Honduras, is currently detained at Moshannon Valley Processing Center and has been held there since April 20, 2026. On December 12, 2023, an Immigration Judge ordered Petitioner be removed to Honduras. (ECF No. 9-7, at 4–5). That same order granted withholding of removal to Honduras under the Convention Against Torture (CAT). *Id.* at 2. The order became administratively final that same day. On April 21, 2026, the Government notified Petitioner that it intends to remove him to Mexico, a third country. (ECF No. 9-6).

Petitioner filed the present Petition for Writ of Habeas Corpus on July 13, 2026, arguing that his continued detention exceeds the authority granted by 8 U.S.C. § 1231(a)(6) and violates the Constitutional principles underlying *Zadvydas v. Davis*, 533 U.S. 678 (2001). After receiving briefing on the Petition, in its Memorandum Order dated August 20, 2026, the Court found that Petitioner had alleged sufficient facts pursuant to *Zadvydas* to shift the burden to Respondents to show that there is a significant likelihood of removal in the reasonably foreseeable future, even though Petitioner had been detained for less than six months and that, on the record as it existed,

Respondents had not made such a showing. (ECF No. 12). In acknowledgement of the shortened period of detention to that point, the Court held the Petition in abeyance and provided Respondents the opportunity to submit evidence of actions taken to effectuate Petitioner's removal and make a showing that that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future. *Id.* at 6–7. The Court additionally ordered Respondents to refrain from transferring Petitioner to custody outside the Western District of Pennsylvania pending further Order of the Court. *Id.*

The Court assumes the parties have read the August 20, 2026, Memorandum Order and does not rehash the findings it previously made. The latest round of briefing provided the Respondents an additional opportunity to file documents to make a showing that there is a significant likelihood of removal in the reasonably foreseeable future. The notable new documents filed by Respondents are a declaration from a Deportation Officer familiar with Petitioner's case (ECF No. 13-1), a Warning for Failure to Depart dated August 4, 2026, (ECF No. 13-3), and a refiling of a Notice of Failure to Comply directed to Petitioner dated August 7, 2026, but served upon Petitioner on August 26, 2026, (ECF No. 13-4). Additionally, Respondents again directed the Court's attention to an August 6, 2026, Decision to Continue Detention authored by Immigration and Customs Enforcement ("ICE") stating Petitioner's continued detention was warranted based on his refusal to exit his housing assignment on May 29, 2026. (ECF No. 9-7).

Respondents contend that, based on that refusal, Petitioner's period of mandatory detention has been extended and, even if the mandatory detention period has not been extended, his continued detention is warranted under *Zadvydas* because there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future.

**II. Legal Standards**

When an order of removal becomes final, “the Attorney General shall remove the alien from the United States within a period of 90 days.” 8 U.S.C. § 1231(a)(1)(A). During this ninety-day “removal period” detention of the alien is mandatory. *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578–79 (2022). The removal period continues past ninety days “if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien’s departure or conspires or acts to prevent the alien’s removal subject to an order of removal.” 8 U.S.C. § 1231(a)(1)(C). Ordinarily, when invoking this extension, ICE must serve the detainee a Notice of Failure to Comply describing the “circumstances demonstrating his or her failure to comply” with the requirements of removal under the Immigration and Nationality Act and “an explanation of the necessary steps that the alien must take in order to comply with the statutory requirements.” 8 C.F.R. § 241.4(g)(ii). However, not providing the Notice for Failure to Comply “within the 90-day removal period … shall not have the effect of excusing the alien’s conduct.” 8 C.F.R. § 241.4(g)(iv).

Detention of an alien subject to a final order of removal cannot be indefinite. Ordinarily, after six months, a detainee may challenge his continued detention as unreasonable. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). If the detainee “provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.” *Id.* If the Government fails to offer such a rebuttal, the detainee’s detention no longer “bears a reasonable relation to the purpose for which the individual was committed” and Due Process demands release. *Id.* (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)).

## III. Discussion

### A. Petitioner is Not Subject to Mandatory Detention Under 8 U.S.C. § 1231(a)(1)(C)

Respondents' first argument is that the period of mandatory detention is extended by Petitioner's non-compliance by failing to exit his housing assignment on May 29, 2026, pursuant to 8 U.S.C. § 1231(a)(1)(C), and that Petitioner is therefore still within the mandatory detention period. (ECF No. 9, at 8). Respondents provide the following timeline: on May 15, Petitioner was transferred to the Port Isabel Processing Center to effectuate his removal to Mexico, that on May 29, he refused to exit his housing pod, and that on June 2, he was transferred back to Moshannon Valley Processing Center. (ECF No. 13, at 4). To support the claim that Petitioner's removal period is extended because of his failure to exit the housing pod, they provided the Notice of Failure to Comply and a declaration provided by a Deportation Officer familiar with Petitioner's case. Neither of these documents, however, note a causal connection with Petitioner's refusal to exit his housing assignment on that day with Respondents' inability to remove Petitioner.

The Notice of Failure to Comply first describes the actions Petitioner must take in assisting ICE to obtain travel documents required to effectuate his removal. (ECF No. 13-4). It does not, however, state that Petitioner actually failed to assist ICE in obtaining the required documents, and elsewhere Respondents acknowledge that they have all documents necessary to effectuate Petitioner's removal. (ECF Nos. 13, at 3; 13-1, at ¶¶ 9–10). Despite being tailored to Petitioner's specific situation, the language describing the documents necessary for Petitioner's removal on the Notice is apparently "standard language." (ECF No. 13, at 5). After a lengthy recitation of this "standard language," the Notice makes a conclusory statement that because of Petitioner's May 29, 2026, noncompliant refusal to exit his housing assignment, the removal period is extended in

his case. The Notice does not make a causal connection between Petitioner's refusal to exit his housing assignment on a particular day and Respondents' inability to remove him on that (or any other) day. It is also notable that the Notice was not served on Petitioner until after the Court noted its absence in its August 20, 2026, Memorandum Order. (ECF No. 12, at 4).

In that Order, the Court noted that the Decision to Continue Detention Respondents had provided did not indicate what steps Petitioner would need to take to be in compliance with the removal order. *Id.* The Notice of Failure to Comply suffers from the same defect, in apparent violation of the same regulation Respondents point to in an attempt to justify the extension of the mandatory detention period. *See* ECF No. 13, at 7; 8 C.F.R. § 241.4(g)(5)(ii) (requiring a Notice to Comply to contain "an explanation of the necessary steps that the alien must take in order to comply with the statutory requirements"). Had the Notice contained this information, the Court might be able to infer a causal connection between how Petitioner's refusal to exit his housing prevented his removal even though the Notice did not directly state a connection.

The declaration provided by the Deportation Officer is likewise nonspecific about the causal connection between the same incident and Respondents' inability to remove petitioner. The declaration does not make the claim that Petitioner was aware of the purpose of the instruction to leave his housing assignment, the contents of that instruction, or any facts sufficient for the Court to infer that the refusal in fact thwarted an attempt to remove him to Mexico. It only states that the Enforcement and Removal Operations ("ERO") field office "intended to present" Petitioner to Mexico's immigration authorities but it does not state that they intended to do so on the same date Petitioner refused to exit his housing assignment. (ECF No. 13-1, at ¶ 24).

Those omissions matter because § 1231(a)(1)(C) requires an act "to prevent" removal, not simply any refusal in detention. Respondents must connect an identified act or a reasonably clear

request that Petitioner failed to satisfy to a step in the actual process of removal that was prevented or materially delayed by this failure. The declaration supports the inference that ICE was pursuing removal in May, but not whether Petitioner's single action actually prevented a step in the removal process that was operationally available.

The Court has given Respondents two opportunities to submit documentation of actions taken regarding Petitioner's removal. Even if the evidence provided by Respondents was sufficient for the Court to find that the mandatory detention period was extended beyond July 19, 2026, Respondents have provided no documentation supporting the conclusion that the detention period still continues. Such an extension would only last until Petitioner demonstrates compliance and for a reasonable amount of time thereafter. 8 C.F.R. § 241.4(g)(1)(ii). Respondents have not provided Petitioner with actionable steps to take that would demonstrate compliance. A Warning for Failure to Depart was separately provided to Petitioner on August 26, 2026, with every generic, pre-filled task checked off, most of which were irrelevant to Petitioner, and all of which were irrelevant to the very incident Respondents assert extended the mandatory detention period. (*See* ECF No. 13-3, at 3). The Warning's generic description of actions that Respondents contend have either been completed or are not required for Petitioner's removal is insufficient for the Court to find that Petitioner is not complying with steps necessary for removal or to make a judgment about for how long the removal period should be extended.

Because Respondents have not put forward sufficient evidence for the Court to find that the removal period has been extended, much less that it still continues, the Court finds that Petitioner is not currently subject to mandatory detention under 8 U.S.C. § 1231(a)(1)(C).

### B. Respondents Have Not Demonstrated a Significant Likelihood of Removal in the Reasonably Foreseeable Future

In the Court's August 20, 2026, Order, the Court noted that, even though Petitioner was within the six-month period in which detention is presumptively reasonable under *Zadvydas*, Petitioner had alleged sufficient facts requiring the government to make a showing that there is a significant likelihood of removal in the reasonably foreseeable future. (ECF No. 12, at 5). As acknowledged by *Zadvydas*, the Court noted that Respondents' burden at the stage before presumptively reasonable time period has elapsed is not especially high due to the inversely proportional nature between length of detention and length of time that counts as the "reasonably foreseeable future." (ECF No. 12, at 4) (citing *Zadvydas*, 533 U.S. at 701). Even though Respondents are credited with a longer time horizon that may be considered to be the reasonably foreseeable future, they still must provide sufficient evidence to show that there is a significant likelihood of Petitioner's removal in that extended period. 533 U.S. at 701.

Respondents have provided sufficient evidence for the Court to conclude that third-country removals to Mexico occur and will occur in the reasonably foreseeable future, but have provided no indication that *Petitioner* will be removed to Mexico (or anywhere else) in the reasonably foreseeable future. Respondents' position is that the only thing they "require[] to remove a person to Mexico is an identity document … which ERO has for Petitioner." (ECF No. 13, at 8). Respondents also inconsistently contend that "the only obstacle" to Petitioner's removal is Petitioner's failure to sign a Notice of Third Country Removal, *id.*, even though ICE treated the notice as served in April and apparently did not need it for the purported attempted removal in May. (ECF No. 13-1, at ¶¶ 8, 23–25). No justification is provided for this apparent contradiction. The only relevant facts provided that are specific to Petitioner's situation are that Petitioner has

been on an awaiting flight manifest list for transportation to a specific port of entry, but that the port of entry must first authorize Petitioner's return for an attempted removal. *Id.* at ¶¶ 30–31.

Despite claiming to have all documents necessary to effectuate Petitioner's removal, Respondents have not provided any anticipated timeline for when that port of entry might authorize Petitioner's return or when Petitioner might get to the top of the flight manifest list. The Court does not have reason to doubt that ICE is genuinely attempting to remove Petitioner, however, *Zadvydas* specifically rejected a standard based on "good faith efforts to effectuate ... deportation" because that would require "an alien seeking release to show the absence of *any* prospect of removal—no matter how likely or unforeseeable." 533 U.S. at 702 (emphasis in original). Respondents must make a showing specific to Petitioner's likelihood of removal and they have not done so.

Finally, Respondents attempt a Hail Mary, blaming the Court's prior Order for their inability to schedule Petitioner's removal. (ECF No. 13, at 8; ECF No. 13-1, at ¶ 31). The Court's August 20, 2026, Order prohibited Petitioner's transfer to custody outside of this District "*subject to further Order of this Court.*" (ECF No. 12 at 7) (emphasis added). Respondents make no excuse for their inability to schedule Petitioners transfer in the months before the Court's Order, but now claim that the Order is an obstacle to removal (although by its terms, it did not prevent or limit any preparatory scheduling). The Court's Order did not deem Petitioner unremovable or prevent Respondents from completing preparatory steps to effectuate Petitioner's removal. As the Order itself stated, it was subject to further Order of this Court. Respondents could have, but did not, ask the Court for a "further Order" to modify the restriction because, for instance, Petitioner had received a spot on a flight or was otherwise imminently ready to be removed. The Court therefore

does not credit Respondents' assertion that the prior Order was an obstacle to Petitioner's transfer. It wasn't.

**IV. Conclusion**

Petitioner has met his burden under *Zadvydas* and Respondents have not provided sufficient rebuttal evidence specific to Petitioner's case for the Court to conclude that that there is a significant likelihood of removal in the reasonably foreseeable future. Thus, Petitioner will be released, but that release will be "conditioned on any of the various forms of supervised release that are appropriate in the circumstances." 533 U.S. at 700. The appropriate form of supervised release for Petitioner will be a requirement to abide by the terms of supervision outlined in 8 U.S.C. § 1231(a)(3) and its promulgated regulations, including 8 C.F.R. § 241.5. *See Wazir v. Att'y Gen. of United States*, 2026 WL 1122610, at *4 (M.D. Pa. Apr. 24, 2026).

AND NOW, this 15th day of September 2026, IT IS HEREBY ORDERED:

- The Petition for Writ of Habeas Corpus, (ECF No. 1) is GRANTED;
- Respondents shall release Petitioner from detention into this judicial district within seven (7) days of the date of this Order;
- Respondents are ENJOINED from re-detaining Petitioner under 8 U.S.C. § 1231 without notice and an opportunity to be heard in which Petitioner has the opportunity to address the likelihood of removal in the reasonably foreseeable future;
- Respondents shall file and serve on Petitioner's counsel notice of the date, time, and location of Petitioner's release at least twenty-four (24) hours before the release is set to occur;

- Petitioner shall be subject to the terms of supervision in 8 U.S.C. § 1231(a)(3) and any attendant regulations;
- Respondents shall release Petitioner with any and all personal property, including the items he had with him at Moshannon Valley Processing Center or at any other detention locations at which he was held;
- Respondents shall file a declaration or affidavit pursuant to 28 U.S.C. § 1746 within seventy-two (72) hours of Petitioner's release, confirming the date, time, and manner of release.

The Clerk will close the case on the docket without prejudice, and the Court retains jurisdiction over the action and the parties pending further proceedings, as may be appropriate, including interpretation or enforcement of its Orders.

/s/ Mark R. Hornak
Mark R. Hornak
UNITED STATES DISTRICT JUDGE

Dated: September 15th, 2026